Between The Long Dock Company, appellants, and James II. Mallery and others, respondents.

M. entered into a contract with the complainants to construct a tunnel. In the progress of the work, M. had received large sums in payment, and the complainants had retained in their hands, by virtue of a stipulation of the contract to that effect, the sum of $42,000, being ten per cent. of the estimate, or supposed value of the works. M., in consideration of the payment to him of this percentage, executed a mortgage upon a large amount of property, consisting of buildings and machinery, tools, &c., with a condition that he would perform the contract within the time therein specified, and in default would repay the said sum of $42,000, with interest, &c. The two clauses which specified the purposes to which the percentage retained was to be applied were as follows: "If the party of the first part refuse or unreasonably neglect to remedy any imperfection which may be pointed out by the engineer, or in any manner violate the conditions of this contract, so that, in the judgment of the engineer, there shall be just grounds of apprehension that the work will not be completed in the manner and within the time herein specified, then it shall be the duty of the engineer to serve a written notice upon the said party setting forth the grounds of his apprehension, and specifying the manner, together with a reasonable time in which the said party may cause such grounds to be removed; and if, at the expiration of such time, such grounds of apprehension be not removed, then full power and authority are mutually vested in such engineer to declare their contract forfeited; and on such declaration being given in writing to the parties hereto this contract shall cease and determine immediately, and the said party of the second part may for ever retain the reserved percentage on account of the consideration for damages which they may have sustained by reason of the forfeiture of this contract," or, as another alterative, the party of the second part, at their option, may allow the party of the first part an extension of time, in which case the party of the first part hereby agree to forfeit to the party of the second part the sum of $2500 for each and every month the work shall be delayed beyond the time herein stipulated for the completion of the same, the amount to be deducted from the engineer's estimates or from the reserved percentage.

Shortly after the execution of the mortgage, attachments were taken out against M. as an absent debtor, which were levied on the mortgaged property, and judgment being entered, the auditors advertised it for sale.

The complainants then filed their bill for a sale of the property to pay the mortgage money, and that they might have priority over attaching creditors, and that creditors might be enjoined from selling. On motion to dissolve injunction, *held—*

1st. That if the bill showed a case for an injunction and receiver, the exer-

cise of that power was called for, although the time of payment set in the mortgage had not yet come, unless the equity of the bill had been met by the answer, and then the power of the court to preserve the pledge from destruction to answer the exigency of the mortgage was undoubted.

2d. That the sum of $42,000 could be retained under the contract not only for the purposes of forfeiture by virtue of the clauses above cited, but to provide against any default which at law would be a defence to an action for its nonpayment.

3d. That, by a just construction of the contract, the company held the reserved fund as security to protect their rights in any respect in which they needed protection, and that the clauses above referred to did not restrict but extended the control of the company over that fund; without them, they had a mere power to retain, by them, they acquired the active power to appropriate it directly to the work of completion.

The complainants made the following case by their bill.

That on or about the 28th May, 1856, they were seized in fee simple of certain lands and real estate in the city of Hudson, in the county of Hudson, and state of New Jersey, over and across which the New York and Erie Railroad Company had located and laid out the route of the railroad, to be built and constructed by them, to continue and extend the railroad of the Paterson and Hudson River Railroad Company to the Hudson river, by virtue of the powers and privileges granted to them by the act entitled, "An act to authorize the New York and Erie Railroad Company to purchase and hold lands, and to complete and finish the railroad of the Paterson and Hudson River Railroad Company to the Hudson river," approved the twenty-first day of February, 1856; and that the complainants, in order to perform and fulfil an agreement before that time entered into by and between them and the said New York and Erie Railroad Company, being desirous to excavate, construct, and complete, across and through said lands in the city of Hudson, and a hill known as Bergen-hill, a tunnel and shafts, and the approaches or open cuts at each end of the tunnel, in such manner as to prepare the same for receiving the super-

structure of said railroad, on or about the said 28th May, 1856, by articles of agreement dated on that day, and made and executed, under their respective hands and seals, between James H. Mallery, of the first part, and the complainants, of the second part, said Mallery agreed to make, excavate, and complete said tunnel, shafts, and approaches in the manner in said agreement specified, and to complete the same on or before the 15th December, 1857; and that complainants thereby agreed that whenever, in the opinion of the engineer of their company, the said contract should have been wholly completed, they would pay for the same in full, for workmanship and materials, according to the schedule of prices in said agreement fixed and contained: and it was by said contract further agreed as follows: "It is further agreed that payments shall be made from time to time, as the work progresses, on the certificate of the engineer for work done, the said engineer to deduct such percentage as he may think proper from the value of the work done, which shall in no case be less than ten per cent." And for further particulars the complainants refer to a copy of contract annexed to their bill.

The complainants further showed that Mallery entered on said work under contract; that for the purpose of doing the work, he built, on said lands of complainants, shaft houses, engine houses, blacksmith shops, and other shops and buildings, steam engines, with their boilers, blowers, shafting, gearing, and other machinery and apparatus thereunto belonging, and other machinery and gearing, and also a bridge, which houses, shops, engines, boilers, machinery, and gearing were attached to said premises; that he bought and procured other tools and machinery, and furnished and provided said blacksmith shops with forges, bellows, anvils, and other tools and implements usually belonging to such shops, and considered part of the same; that on or about the 28th July, 1857, said Mallery had made considerable progress

in said work, and that complainants had paid him for said work, as the same progressed, on the·certificate of the engineer as to the value thereof, deducting from the supposed value of said work ten per cent. of the value thereof, to be retained until the completion of said work; that complainants paid said Mallery about $400,000 for the work performed, and had retained about $42,000, being ten per cent. of the supposed value of the work done; that Mallery, being desirous of obtaining the advance and possession of said sum of $42,000 before the completion of said contract, until which time it was not payable by the terms of said contract, requested complainants to advance the same to him, and offered to secure the completion of the work by the time mentioned in said contract, or the repayment of said sum, by a mortgage upon said houses, shops, buildings, engines, machinery, tools, implements, and other property above mentioned, which he had placed upon complainants' land; that complainants agreed to advance and pay the said $42,000 upon such security, and accordingly, on the said 8th day of June, 1857, did advance and pay the same to said Mallery, and upon such payment, and to secure the repayment of the same in case said tunnel and shafts should not be fully completed by the time in said contract mentioned, said Mallery executed and delivered to them a mortgage bearing date on that day, and which was of the tenor following: This indenture, made this eighth day of July, in the year eighteen hundred and fifty-seven, between James H. Mallery, of Newburgh, Orange county, in the state of New York, of the first part, and the Long Dock Company, of the state of New Jersey, of the second part, witnesseth, that whereas the said James H. Mallery, by a contract made with said party of the second part, dated on the twenty-eighth day of May, in the year eighteen hundred and fifty-six, contracted and agreed to construct and excavate a tunnel through Bergen hill, and to do other work in said contract in the

manner therein set forth, and at the prices and with-
in the time therein specified, and it was, among other
things, agreed that ten per cent. of the estimates of the
work done by said James H. Mallery under said contract
should be retained until said work was completed and
the contract fully performed in the manner and within
the time designated therein, the same being retained as
security for such performance; and whereas said party of
the second part have paid and allowed to said James H.
Mallery forty-two thousand dollars of said moneys so re-
tained, upon said James H. Mallery giving to them se-
curity by these presents upon his tools and machinery
that said contract shall be fully performed on his part, or
said money, with interest, refunded—now therefore, said
party of the first part, in consideration of the premises
and of one dollar to him paid by the said party of the
second part, doth hereby grant, bargain, sell, assign,
transfer, and convey to said party of the second part and
their assigns all and singular the tools, machinery, fix-
tures, and apparatus belonging to him, and bought or
used by him for the making the excavations and con-
structing the said tunnel through Bergen hill, in the city
and county of Hudson, and state of New Jersey, and
now in the course of being constructed and made by me,
which tools, machinery, fixtures, and apparatus are speci-
fied and designated in the inventory hereto annexed and
forming part of these presents, together with all and sin-
gular the appurtenances thereunto belonging or in any
wise appertaining: to have and to hold the same to the
said party of the second part and their assigns to their
only proper use for ever. Provided always, and it is
agreed between the parties to these presents, that if the
said James H. Mallery shall well and truly perform in
all things the said contract by him made with the said
party of the second part within the time and in the man-
ner therein specified, or in case said contract shall not be

fully performed in the manner therein specified within the time therein mentioned and stipulated for the completion thereof, shall at the said time repay to said party of the second part the said sum of forty-two thousand dollars, with interest thereon from the date hereof, then these presents to be void and of no effect, and the right and title to said tools, fixtures, and machinery to revert and belong to the said party of the first part.

In witness whereof, the said James H. Mallery hath hereunto set his hand and seal the day and year first above written.

JAMES H. MALLERY,    [L. S.]

The bill then alleges that the buildings, houses, engines, &c., mentioned in mortgage were real estate; and that the mortgage, having been duly proved, was, on the 10th July, 1857, recorded in the office of the clerk of Hudson county.

The bill then proceeds as follows: " And your orators further show, that the said James H. Mallery did not perform in all things his contract made with your orators within the time and in the manner therein specified, nor did he, at the time mentioned in said contract for the completion thereof, said contract not being then performed, pay back to your orators the said sum of $42,000, with the interest thereon from the date of said mortgage; but on the contrary, the said James H. Mallery, on the said 15th December, 1857, the day mentioned in said contract for the completion of the work therein contracted to be done and performed, had not performed and completed the work therein by him agreed and stipulated to be done and performed, and had left more than one-third, both in quantity and value, of the work in said contract agreed to be performed utterly undone and unperformed, and has not since that time done anything towards or in the performance of the same; and that the said James H. Mallery, although often requested so to do by your ora-

tors, has not paid to them said sum of $42,000, or the interest thereon, or any part thereof.

And your orators further show, that by reason of the said James H. Mallery not performing said contract within the time and manner herein specified, and not having thereupon at said time repaid to your orators said sum of forty-two thousand dollars, with interest, according to the condition of said mortgage, that said mortgage has become forfeited, and the title to the property thereby mortgaged is absolute in your orators.

And your orators further show, that said James H. Mallery resided in the state of New York, and out of the state of New Jersey, and that, on or about the eighth day of October, eighteen hundred and fifty-seven, one Cornelius D. Clark, claiming to be a creditor of said James H. Mallery, sued out a writ of attachment against said James H. Mallery, as a nonresident debtor, from the Circuit Court of the county of Hudson, which writ was for the sum of one thousand dollars, and was returnable on the fourteenth day of the same month; and that by virtue thereof, Henry B. Beaty, esq., the sheriff of the county of Hudson, to whom the same was directed and delivered, on the ninth day of the same month, seized, attached, and took possession of the said shaft houses, engine houses, shops, buildings, engines, machinery, gearing, tools, and implements mortgaged to your orator by said mortgage, and specified in the inventory thereto annexed; and the said sheriff returned said writ, with an inventory of the same and other property levied on by him thereunto annexed, a copy of which inventory is hereto annexed, and marked schedule C.

And your orators show, that of said property so attached and returned in said inventory by said sheriff, the greater part is contained and enumerated in said mortgage to your orators, and are mortgaged to them, and that the parts so contained and mortgaged are as follows, *viz.* six steam engines, 13 inch cylinders, three feet stroke;

2 o*

one 12 inch, three feet stroke; one 8 inch, two feet stroke; one 7 inch, one and a half feet stroke; five boilers, four feet shell, seventeen feet long; three, three feet shell, twelve feet long; one, three feet shell, twelve feet long, with full sets of hoisting and gearing to each; steam gauges and patent blowers; eight shaft houses, 23 feet post, 17 by 19 feet; nine engine houses, 13 feet post, 28 by 31 feet; one truss bridge, with shaft houses, 18 feet post, 12 by 20 feet; also a heavy set of extra hoisting gearing in No. 1 shaft house, and wire rope at each shaft; 16 blacksmith shops, 7 feet post, 13 by 24; one jobbing shop, 12 feet post, 17 by 26; one carpenter shop, 12 feet post, 23 by 26, with material and warehouses attached; also 33 anvils, 31 blacksmith's bellows, two full set of jobbing blacksmith's tools, six patent fan blowers, two common box blowers, 25 tunnel trucks, 3 tunnel dumpers.

And your orators further show, that before the return of said writ of attachment, said circuit court appointed Garrick M. Olmsted, David Bedford, and Edmund T. Carpenter auditors therein; and such proceedings were thereupon had that, on the thirteenth day of May, in the year of our Lord one thousand eight hundred and fifty-eight, judgment was rendered in said attachment suit against said James H. Mallery, in favor of said Cornelius D. Clark, for the sum of five hundred and fifty dollars and fifty-eight cents, besides costs of suit to be taxed, and also in favor of one hundred and twenty-seven other persons, who had respectively presented their claims as creditors of said James H. Mallery to said auditors, who approved the same, which other claims, as allowed by said auditors, and upon which judgment is so given, amount in the whole to the sum of twenty-four thousand and twenty-four dollars and eighty-three cents.

And your orators further show, that said auditors have advertised and given notice, in the manner required by law in such cases, that they will sell at public auction, on

the twenty-fifth day of June, eighteen hundred and fifty-eight, the property so attached by said sheriff, including the part included as aforesaid in your orators' said mortgage, and that said sheriff, when he attached the same, took it into his possession, and has delivered the same to said auditors, and that they threaten and intend to sell the same, on said last mentioned day, at public auction in parcels, to any person who may bid for the same, and to deliver the possession thereof to said purchasers, and permit them to remove the same.

And your orators further show, that said buildings, machinery, fixtures, tools, and chattels, so mortgaged to them, are of great value, and of the value of twenty-five thousand dollars and upwards, and that a large part of their present value consists in their being erected, fixed, and located in the proper positions for use and operation for the purpose for which they were procured, and that they will not be worth half their value if pulled down and removed to any other situation.

And your orators further show, that said auditors and said plaintiff in attachment give out and pretend that said mortgage of your orators is not a valid lien on said property in said mortgage and the inventory thereto annexed, described, and mortgaged as against said attachment, and that a sale by them will sell said property free from said mortgage; and your orators claim that said mortgage is a valid lien on said property; that by reason of said contrary claim, said property, at such auditor's sale, will not bring half of the value, or what it otherwise would bring; and that if the same is sold by said auditors at public auction, it may be purchased by a great number of buyers, who will remove the same; and also may be irresponsible, and the whole security of your orators will be much injured, and rendered almost worthless.

And your orators further show, that said property is a scanty and insufficient security for said sum of forty-two thousand dollars, and the interest thereon, and that the

whole of said sum is due and payable from said James H. Mallery to your orators; and that the possession and use of said mortgaged property has remained, and still remains with said James H. Mallery and said Henry B. Beaty and said auditors, or some of them, and has never been with your orators.

And your orators have frequently and in a friendly manner applied to said James H. Mallery and said Cornelius D. Clark, and said Garrick M. Olmsted, David Bedford, and Edmund T. Carpenter, who are the defendants in this suit, and requested them, or some of them, to pay said sum of forty-two thousand dollars, with the interest as aforesaid so due to your orators, and to desist from selling said mortgaged property until your orators' said debt was paid and satisfied, and your orators had well hoped that they would have complied with such reasonable request of your orators, as in equity and good conscience they ought to have done; but now so it is, may it please your honor, that said defendants refuse to comply with such reasonable request of your orators, and threaten and intend to sell said property so mortgaged to your orators.

All which actings, refusals, and threats are against equity and good conscience, and tend to the manifest wrong, injury, and oppression of your orators. In tender consideration whereof, and inasmuch as your orators are remediless in the premises in the courts and by the rules of common law, and can only have adequate relief in this court, where such matters are properly cognizable, and to the end that the said defendants may, upon their several and respective corporal oaths, true, full, and perfect answer make to all and singular the premises, as fully and particularly as if the same were here again repeated, and they thereto particularly interrogated, and that your orators' said mortgage may be declared to be a lien upon the said property described in said mortgage, and the inventory thereto annexed prior to said attachment, and that the

amount due on said mortgage for principal and interest may be ascertained, and that the defendants, or some of them, may be directed to pay the same, and in default thereof that said property may be sold by the order and decree of this court, and that out of the moneys arising from the sale your orators may be paid the amount due on said mortgage, with all their costs in this suit, and that said Garrick M. Olmsted, David Bedford, and Edmund T. Carpenter may be restrained by this court from selling so much of said property attached by said sheriff as is included in said mortgage and the inventory thereto annexed, comprising the articles herein above enumerated as so included, and that a receiver may be appointed to take charge of said property so attached and included in your orators' said mortgage, and that your orators may have such other and further relief as the nature of their case requires as may be agreeable to equity and good conscience, and as to your honor shall seem meet.

May it please your honor, the premises considered, to grant unto your orators the state's writ of subpœna, issuing out and under the seal of this honorable court, to be directed to said James H. Mallery, Cornelius D. Clark, Garrick M. Olmsted, David Bedford, and Edmund T. Carpenter, commanding them, and each of them, at a certain day and under a certain penalty, therein to be expressed, to appear before your honor, in this court, to answer all and singular the premises in manner aforesaid, and to stand to, abide by, and perform such order and decree therein as to your honor shall seem meet and as shall be agreeable to equity and good conscience; and also to grant unto your orators the state's writ of injunction, to be directed to said defendants, commanding them, and each of them, absolutely to refrain and desist from selling, disposing of, or carrying away any of the property or articles mentioned or contained in your orators' said mortgage or the inventory thereto annexed, including those above enumerated as contained therein and at-

tached by the sheriff in said suit, until the further order of this court therein.

The copy of the contract annexed to the bill contained the following stipulations:

For the purpose of avoiding all causes of difference or dispute between the parties to this contract, relative to its true intent and meaning, and for the purpose of adjusting, in an amicable manner, any difference that can or may arise relative thereto, it is hereby mutually understood and agreed, by and between the parties, as follows, *to wit:*

1. No extra charges shall be claimed or allowed on account of changes in the work, the prices herein mentioned being considered as full compensation for various kinds of work herein agreed to be performed.

2. If the party of the first part shall refuse or unreasonably neglect to remedy any imperfections which may be pointed out by the engineer, or in any manner violate the conditions of this contract, so that in the judgment of the engineer there shall be just grounds of apprehension that the work will not be completed in the manner and within the time herein specified, then it shall be the duty of the engineer to serve a written notice upon said party, setting forth the grounds of his apprehension, and specifying the manner, together with a reasonable time in which said party may cause such grounds to be removed; and if, at the expiration of such time, said grounds of apprehension be not removed, then full power and authority are mutually vested in said engineer to declare this contract forfeited; and on such declaration being given in writing by the engineer to the parties hereto this contract shall cease and determine immediately, and the said party of the second part may for ever retain the reserved percentage on account of the consideration for damages which they may have sustained by reason of the forfeiture of this contract.

Or, as an alternative to declaration of forfeiture, the

party of the second part shall, on written report of their engineer that apprehensions are entertained that this contract will not be completed in the manner or time herein stipulated, have the right to take such measures as may be deemed by their engineer necessary to insure the completion of the contract in the time and in the manner herein stipulated, and to deduct from the monthly and final estimates of work done under this contract such sums as may be required to defray the expenses of such measures. Among the measures which under such circumstances may be resorted to are—the execution, by their own agents, of such portions of the work as the said engineer may select, or the requirement that the party of the first part shall provide for and employ in the most efficient manner such additional men, carts, teams, &c., as the party of the second part shall furnish; in which case said party of the first part agrees to employ said men, carts, teams, &c., in the manner directed by the engineer of the party of the second part.

Or, as another alternative to a declaration of forfeiture, the party of the second part, at their option, may allow the party of the first part an extension of time; in which case the party of the first part hereby agrees to forfeit to the party of the second part the sum of two thousand five hundred dollars for each and every month the work shall be delayed beyond the time herein stipulated for the completion of the same, the amount to be deducted from the engineer's estimates or from the reserved percentage.

The defendants filed their answer, but the contents are sufficiently stated in the opinions delivered to render the case intelligible.

The case was argued before the Chancellor on motion to dissolve the injunction, and in October term, 1858, an opinion was delivered by him granting the motion. This appeal was taken from that order. The opinion of the Chancellor will be found *ante*, page 93.

*A. O. Zabriskie,* counsel of appellants.

*Gilchrist* and *Wakeman,* counsel for respondents.

The following opinions were delivered.

WHELPLEY, J. Complainants and Mallery entered into a contract under seal, dated the 28th May, 1856, by which Mallery, for the prices specified, agreed to furnish all the implements necessary to construct the Bergen tunnel, on the New York and Erie Railroad, and do the work according to the specifications in the agreement; and complainants agreed that whenever, in the opinion of their engineer, the contract should have been wholly completed by Mallery, they would pay for the same in full at the specified prices. And by a subsequent clause of the agreement, it was stipulated that payments should be made from time to time, as the work progressed, on the certificate of the engineer for work done, such percentage to be deducted from the value of the work done in no case to be less than ten per cent., as the engineer might think proper. The work was to be completed by the 7th December, 1857.

Mallery began his work, and progressed so that he received on monthly estimates, up to the month of June, 1857, $378,000. The company retained ten per cent., or $42,000.

By the contract, the company had the right to retain, until the completion of the contract work, the whole price, except the ninety per cent., which, by this clause, they had agreed to pay during its progress on the certificate of the engineer; the ninety per cent. was excepted out of the operation of the clause postponing payment of the whole price till the end of the work; indeed it might have been much less than ninety per cent., as the reserved per cent. was to be in no case less than ten; that was a *minimum,* no *maximum* was fixed. If the estimates were correct, the company had in hand, on account of this re-

servation, on the 8th June, 1857, $42,000. This money Mallery had no right to demand until the close of his contract, although he might have performed his contract to the letter.

The character of the work required heavy expenditures for labor and materials. To meet it, Mallery required not only his cash payments, but also the reserved fund of $42,000. He applied to complainants to pay him this in advance of the completion of the work; he did not ask the company to modify the contract, nor hold out any inducement for this advance, save that thereby the progress of the work would be more rapid. The company received no new consideration—the advance was a gratuitous favor extended to him, which the company could have denied without dishonor. His request was acceded to on his own terms, that he should make a mortgage upon his tools and apparatus belonging to the execution of the work, which mortgage, he states in his answer, was " to answer the same purposes which the retaining of said ten per cent. was intended to answer by the terms of the contract."

It was executed, and the money paid to him. It recites " that it was, among other things, agreed in the contract that ten per cent. of the estimates of the work done by him should be retained until said work was completed, and the contract fully performed, in the manner and within the time designated therein, the same being retained as security for such performance, and that the money had been paid upon his giving this mortgage; that said contract should be fully performed, or the money refunded with interest."

The proviso in the mortgage was double.

. 1st. That if Mallery should well and truly perform in all things the said contract within the time and in the manner therein specified—or 2d, in case said contract should not be fully performed in the manner therein specified within the time herein mentioned (*i. e.* 7th De-

2 P

cember, 1857,) and stipulated for the completion thereof, that he should at the said time (*i. e.* 7th December, 1857,) *repay* to the complainant the said sum of $42,000 and interest from the date of said mortgage.

No doubt the parties to this arrangement understood their relative positions to be unchanged by it, except that the custody of the $42,000 was to be changed, pending the completion of the work up to the time fixed for its completion, from the treasury of the company to that of Mallery. It was nothing but a conditional payment of money supposed to have been earned by him, but not yet due and payable, to accommodate and relieve his present wants, to be returned *repaid* on the 7th December, 1857, if the tunnel was not then complete.

The terms of the proviso were not, that in case the contract was not performed as far as he was bound to perform it, considering the relative performance of the company, he should repay the money, but that in case said contract should not be fully performed in the manner therein specified within the time therein mentioned for the completion thereof, he would *repay* the money with interest. The sum was not to be apportioned in view of part performance—the money referred to was to be repaid with interest without abatement or division.

Clearer language could not have been used to denote that the performance contemplated by the proviso was to be absolute actual performance, not constructive legal performance, or rather partial performance, with an excuse for nonperformance of the residue. Time was made the essence of the proviso.

If the company designed to retain the vantage ground given them by the contract and the reserved ten per cent. it was necessary to fix a time for the repayment of the money. If the repayment was dependant upon whether or not Mallery in good faith strove to fulfil his contract, if the proviso had expressed that idea, the company would have perceived that the condition of the mortgage

did not secure them or answer the same purposes which the retaining of the ten per cent. was intended to answer. The tunnel was not completed at the time specified, and is now incomplete.

The complainants' bill claims that the condition of the mortgage has not been performed; that the tunnel has not been completed; that the time fixed for the repayment of the money has passed, and it is still unpaid; and that, for these reasons, they are entitled to a sale of the mortgaged premises. They have also alleged that certain creditors of Mallery have, by virtue of an attachment out of the Hudson Circuit, levied upon and seized the mortgaged property, and the same is about to be sold by auditors appointed under the writ, at public auction in parcels, so that the property will go into the possession of a great number of purchasers, some of whom will be irresponsible; that this will render the plaintiffs security at best, but security almost worthless.

The prayer of the bill is for an injunction and receiver. The injunction was granted.

The defendants, Mallery and Clark, one of the attaching creditors, have severally answered the bill. The injunction was dissolved, and the appointment of a receiver denied.

From this order the appeal has been taken.

All parties concur in one thing—all desire a sale of the property. Mallery desires a sale under the attachments, the complainants under the mortgage. The creditors claim the proceeds on payment of their debts, the complainant on payment of his mortgage.

The claim of the complainants is not to be *paid* the proceeds, as absolutely due them, but to have the money returned to their custody, whence it was taken for the accommodation of Mallery. The claim is to have the parties restored to the situations in which they were before the complainants parted with the custody of the money for Mallery's accommodation. When repaid, the money

will still be liable to his claims on a final adjustment of the controversy. If paid into court or to a receiver, it would be there to be paid to whom it may be decided rightfully to belong. If, on the other hand, the property be sold, and the money divided by the auditors under the attachment, the remedy of complainants for what may be eventually found due them is gone for ever.

If the bill shows a case for an injunction and receiver, the exercise of that power is called for, although the time of payment set in the mortgage has not yet come, unless the equity of the bill is met by the answer. The reasoning of the Chancellor on that point is conclusive. The power of the court to preserve the pledge from destruction to answer the exigency of the mortgage is undoubted.

The Chancellor denied relief for two reasons.

1st. That complainants have no right to a repayment of the money to be held as an indemnity; and if they have, that the bill is not filed in that aspect.

2d. That complainants cannot claim the money until they show a right to hold it as their own on account of some breach of the contract—that is, that the condition is not broken unless the defendant has forfeited all claim to it; unless it has become a forfeit to be retained as a penalty when reserved by complainants.

This is a harsh construction of the contract, and ought not to be adopted, unless clearly required by its terms.

The mortgage is not to be considered as a substitute for the forty-two thousand dollars; such a substitution, so as to alter or impair the rights of the complainants to that fund, substitute a lesser for a greater security—substitution, in the sense of settling and compromising one right for another, could not have been contemplated by the parties.

It was of the essence of the arrangement that complainants should, by means of the mortgage, have the same control over the $42,000 as if they had not parted

with it to defendant. In no other way could it "answer the same purposes as the retained fund answered."

The right given to complainants by the contract to retain the $42,000 was absolute—it was to retain until the actual completion of the work. It is, in fact, the last instalment—not payable till then.

The right was very valuable to secure the prompt performance of the work.

The contract shows, as well as the custom of engineers, set up in the answer, that the monthly estimates of work done are not exact, but approximate measurements; when the final exact estimate is made, it may turn out that the aggregate quantities of the monthly estimates exceed the final measurement. In that event the reservation will be seen to be a valuable protection against overpayment.

It cannot be contended that, if the work be completed, and the sum of the monthly estimates be $400,000, and the final estimate but $360,000, that the contractor may recover the ten per cent. upon the $400,000; and yet this result will follow if the ten per cent. is retained for forfeiture only, and not in any case as security against overpayment.

It must be true that it could be retained to provide against any default which, at law, would be a defence against an action for its nonpayment. It is equally clear that its repayment may be demanded for any cause which would bar its recovery from the company by action, if it had not been paid conditionally to Mallery. If this be not so, the substantial rights of the parties have been changed by this arrangement.

The purposes for which the retention is authorized are not restricted; they are to be determined by the whole scope and object of the contract, and the contingencies which might happen during its performance.

Where the parties provide a remedy of this character, it is to be presumed they intend it should be co-exten-

2 p*

·sive with all the ·mischief for which it is an appropriate remedy, and did not intend to confine it to a single object, and .that a forfeiture of a sum of money by way of penalty, and not as compensation. 2 *Comyn on Con.* 533; 2 *Parsons on Con.* 11, and cases there cited.

The law will not construe a sum of money named in an agreement to be forfeited, unless in extreme cases. It will be held to be a penalty to cover whatever damages the party may have actually sustained, unless the parties have stipulated to the contrary in such clear and unequivocal terms as leave no room for doubt, and then only where it is manifest the parties undertook to settle the damages beforehand to arise from a particular misfeasance or nonfeasance.

. The special power given, not to the company but the engineer, to delare the contract, and as incidental to that, the ten per cent., forfeited, to be retained for ever for damages which may have been sustained by reason of the forfeiture of the contract, which forfeiture is authorized in case the contractor refuses to comply with the contract after written notice served by the engineer specifying the grounds of complaint, can by no just rule of construction be held to control the right to hold or dispose of the reserved fund, and restrict it to the single purpose of being retained for contingent forfeitures or for the alternatives to the declarations of forfeiture, also provided in the contract. The first of these alternatives does not contemplate any appropriation of the ten per cent., as such—it . merely gives the power to the company to take measures to secure the completion of the work independently of the contractor; nor does the second alternative refer to the appropriation of the ten per cent. merely: both of these alternatives have other objects than the appropriation of the reserved fund.

These three clauses are designed to extend, not restrict the control of the company over that fund, so far as they refer to it. Without them they had à mere power to retain

—by them, they acquire the active power to appropriate them directly to the work of completion.

That the additional privilege of forfeiture and appropriation of the fund is expressly given, does not, by any just rule of construction, show that the right of holding it for any purpose fairly within the scope of the contract does not exist.

These powers are cumulative, not exclusive, the one of other. There are no restrictive words employed to confine the appropriation of the fund to those purposes. If, then, the ten per cent. was not reserved merely for the purpose of absolute forfeiture, but to protect the rights of the company in any respect in which they needed protection, it is clear that even if the mortgage does not fix a day of payment past when the bill was filed, and therefore not forfeited, yet it does appear, from the statement of the bill, that the tunnel has not been completed, the contract closed, and that complainants' lien on the mortgaged premises still exists, and while it exists this court will protect it by preventing a destruction of the pledge. The allegations of the bill are sufficient for this purpose; it shows the mortgage, the object of it in the light of the contract, the nonfulfilment of the contract, the threatened sale and dispersion of the property. What more is necessary? The unnecessary allegation, that the money is due, will not vitiate it. It shows a case of threatened irreparable mischief to a right resting on a contract of mortgage under seal, entitled to the protection of the court. The mortgage is the sole restraint—no bond accompanied it.

From these considerations, I have reached the conclusion that this bill sets forth a sufficient ground for the interposition of the power of the court by injunction, because it shows that complainants are entitled to a lien on the property by reason of the noncompletion of the tunnel, which lien is in danger of destruction by the wrongful acts of defendants, and this without regard to the

question whether the mortgage is forfeited or not. Indeed it would seem that, unless the time within which the contract may be declared forfeited has passed, that complainant has the right to have the property preserved; so that if it should hereafter be declared forfeited in the manner pointed out by the special clause, or if the company should desire to appropriate the money to the purposes for which its appropriation is authorized by the alternatives to the power of forfeitures, it may be forthcoming. The reasons why the court should preserve the fund for such a purpose have been conclusively given by the Chancellor. The reasons given why the property should be sold, and the fund held to await the decision of the court upon the conflicting claims of the complainant and the creditors, are equally conclusive. There would be nothing to hinder the court ordering the property sold clear of all encumbrances for the benefit of creditors. This, it will be recollected, is a mortgage of personal, not real estate; difficulties that may be in the way of the appointment of a receiver in the case of a mortgage upon land do not here exist. The necessity of a sale to preserve the property for the benefit of creditors and the complainant alike is manifest, and admitted by the parties.

The remaining question is, have the defendants, by their answers, entitled themselves, according to the course of the court, to a disolution of the injunction?

Mallery does not set up that he has, according to the condition of the mortgage, fully performed the contract in the manner therein specified, within the time therein mentioned and stipulated for the completion thereof, nor that he has repaid to the complainants the said sum of forty-two thousand dollars, therein mentioned. The difficulty of pleading in the answer a direct performance of the contract stared the pleader in the face, and he endeavored to meet the inquiry, for he says he denies it is true that he did not in all things perform his contract

with the complainants in the time and in the manner specified therein, in the sense in which the same is alleged in the bill of complaint; on the contrary thereof, he expressly charges, that he did perform the same in all things until the said complainants required the defendant to cease and discontinue the performance of the same.

The answer is a manifest confession and avoidance of the allegations of the bill.

It sets up as an excuse for nonperformances.

1st. That complainants requested him to stop the further progress of the work through their agent, Mr. Mason, the president of the New York and Erie Railroad Company.

2d. That the complainants did not pay him as they agreed to do.

The first allegation is denied by complainants, and on the hearing of the motion to dissolve, the affidavit of Mr. Mason was read, denying any authority, as the agent of the complainants, to stop the work; and that he did, prior to the 19th November, then past, (the affidavit was taken 21st July, 1858,) give the defendant, Mallery, any order or direction as to his going on with or stopping his work under the contract, and that Mallery had been paid for a much greater quantity of work than he had done, and at a price beyond the contract price and the additional price they had agreed to pay, to wit, nine dollars per yard for headings; that Mallery said the estimates were false, that the money was paid by complainants' ignorance of the facts, and was a fraud upon complainants; that the complainants did not, at the time Mallery stopped, nor do they now, owe him any money for work done upon the contract, according to the terms thereof, or according to the prices fixed for work by their engineers, and that he has been overpaid several thousand dollars.

This affidavit is to rebut the allegations of the answers,

touching the admitted fact, that at a certain stage of the work the company agreed to pay for the excavation of the headings of the tunnel, at the cost of $9 per cubic yard, for 8½ cubic yards of headnig, per foot of tunnel; and footings, at $27.98 per cubic yard, for 13 yards, per foot of tunnel.

The complainants have undertaken to show, by the examination of H. L. Southard, a practical engineer, who measured, since the suspension of the work, the average height of the headings taken out by Mallery to be found forty hundredths cubic yards per lineal foot of the tunnel, instead of eight and one half cubic yards, at which the heading was stipulated to be paid for, at the rate of $9 per cubic yard.

The complainants allege that Mallery has charged and received payment for estimates for May, June, July, August, and September, 1857, allowing him for eight and one half cubic yards per lineal foot of tunnel of headings, although he in fact excavated but six and onehalf cubic yards per foot, and this, too, at the rate of $9 a cubic yard; and that he has thus received some hundred' thousand dollars more than he has earned.

The defendant justifies this by setting up an usage of engineers to estimate for more than the work actually done, in order to compensate for work of more expensive and difficult character than ordinary.

I have stated these several counter statements and insistments of the parties, not for the purpose of examining and testing their accuracy and weight, but to show that there are matters and contested questions of great importance involved in the final determination of the case, upon which the parties ought to be deliberately heard. They show that in a case of this kind, where the rights of the complainant does not rest upon a mere equity, but are founded on a contract under seal, sought to be enforced in this court because of its power to provide an adequate remedy, where the whole remedy will

be lost by a decision upon the merits at this stage of the case, the court should·defer a decision upon the merits until the final hearing, and that the injunction should be retained until that time.

The order dissolving the injunction should be reversed; the injunction continued to the hearing, and the case be remitted, to be proceeded in according to law.

OGDEN, J.  In this case I am of opinion that the mortgage was given and received in place of the retained percentage, which was held under the contract solely for the accommodation of Mallery, and that it should be dealt with upon the same principles that we would deal with the money, if Mallery was now claiming under this contract to have it paid over to him by the company; that the money was retained by the company as security for the performance of the contract by Mallery, and also to indemnify them against damage from a nonperformance on his part; and that the parties further agreed that the company should also have the option of making the whole a forfeiture upon one contingency, or of making monthly forfeitures of portions of it upon another contingency, but that the company were not bound to take a course which necessarily would create an absolute forfeiture, in order to avail themselves of the benefit of the percentage retained; that the company had a right to retain this money, under the second section of the sixth condition of the contract, until the contract should have been wholly completed, unless the contractor was prevented from executing it by the conduct of the company, and hence that the complainants should be directed to retain a lien on the mortgaged property to the same extent that they could have retained the money.  Parties who had obtained liens upon the mortgaged property subsequent to the execution and registry of the mortgage held by the company were preparing to sell the property regardless of the claim of the company; and upon a bill

filed by the company, praying for an injunction and a hearing, an injunction was granted, and it has been served. Upon the defendants putting in answers, the Chancellor dissolved the injunction. I think he erred in making that order, because, in the view which I take of the case, the question, whether the complainants have lost their lien upon the property, which is conceded to have been well created, cannot be correctly determined upon bill and answer. Proofs must be taken to show why the contract was not performed, whether from the default of the company or of the contractor; an account must in some way be stated between them to ascertain whether the amount represented by the mortgage is really due and payable to the contractor, even if he was not responsible in damages for failing to complete the work; and if he shall be proved to be in default, how much of the detained percentage should be applied as indemnity for the company? If the creditors should now be permitted to sell the personal chattels mortgaged to the company, the security of such mortgages would be utterly destroyed. I am of opinion that the decree dissolving the injunction should be reversed, and that the injunction should be continued to the final hearing, and that the property should be sold, under the direction of the Court of Chancery, for the best prices that can be obtained for the same; and that the avails of the sales should be paid into that court, to be applied, by the orders of the Chancellor, to such of the litigating parties as, upon a further investigation of the rights, he shall determine are entitled to the same.

The decree of the Chancellor was reversed by the following vote:

*For affirmance*—Judges ELMER, CORNELISON, VALENTINE.

*For reversal*—CHIEF JUSTICE, Judges COMBS, OGDEN, VREDENBURGH, RISLEY, WOOD, HAINES, SWAIN, WHELPLEY.